1

2

3

4

5

6

7

8

9                   UNITED STATES BANKRUPTCY COURT

10                   FOR THE DISTRICT OF OREGON

11  In Re:                              )
                                        )
12  MELISSA CLARK,                      )     Bankruptcy Case
                                        )     No. 06-62407-aer13
13  _____Debtor._____  )
                                        )
14  DAVID C. & MARY C. HOUTS,           )     Bankruptcy Case
                                        )     No. 08-62216-aer13
15  _____Debtors._____  )
                                        )
16  DONALD & JOLEE TAYLOR,              )     Bankruptcy Case
                                        )     No. 08-62785-aer13
17  _____Debtors._____  )
                                        )
18  TED C. & JUDY A. BERGE,             )     Bankruptcy Case
                                        )     No. 09-61563-aer13
19  _____Debtors._____  )
                                        )
20  PHILLIP K. & KELLY D. GALLOWAY,     )     Bankruptcy Case
                                        )     No. 09-61595-fra7
21  _____Debtors._____  )
                                        )
22  KRISTI B. CARAWAY,                  )     Bankruptcy Case
                                        )     No. 09-61596-aer7
23  _____Debtor._____  )
                                        )
24  SAMUEL T. & BEVERLY A. BARNARD,     )     Bankruptcy Case
                                        )     No. 09-61605-aer7
25  _____Debtors._____  )

26



MEMORANDUM OPINION-1

| | | |
|---|---|---|
| 1 | ) | |
| | DAVID A. CHILSON, ) | Bankruptcy Case |
| 2 | ) | No. 09-61553-aer7 |
| | _____ Debtor. ) | |
| 3 | ) | |
| | JAMES D. MOONEY, ) | Bankruptcy Case |
| 4 | ) | No. 09-61608-aer13 |
| | _____ Debtor. ) | |
| 5 | ) | |
| | RAYMOND L. & KATHLEEN A. WELLER, ) | Bankruptcy Case |
| 6 | ) | No. 09-61567-aer13 |
| | _____ Debtors. ) | |
| 7 | ) | |
| | JUSTIN D. WILSON, ) | Bankruptcy Case |
| 8 | ) | No. 09-61309-aer13 |
| | ) | |
| 9 | _____ Debtor. ) | MEMORANDUM OPINION |

10          This matter comes before the court on orders to show cause in

11  each of the above-captioned cases why attorney Keith Hayes' fees should

12  not be reduced or denied and why his current suspension should not be

13  continued for an additional 90 days.  An evidentiary hearing was held on

14  August 3, 2009, after which the matters were taken under advisement.

15          Background:

16          On March 26, 2009, this court entered its Memorandum Opinion and

17  Order in Clark, Houts and Taylor suspending attorney Keith Hayes from

18  practice before the United States Bankruptcy Court for the District of

19  Oregon for 90 days (**the March 26th Order**).  Under the March 26th Order,

20  the suspension began 60 days from the Order's entry (**the grace period**).

21  During the grace period Mr. Hayes was permitted to take appropriate

22  action to conclude his existing cases or find substitute counsel; he

23  could not, however, file new cases.  In addition, as part of the March

24  26th order, in the Clark case, Mr. Hayes was ordered to disgorge $2,950

25  to the Chapter 13 Trustee and $750 to legal insurer ARAG, North America,

26

MEMORANDUM OPINION-2

1  Inc. by  April 20, 2009, all without prejudice to any claims Ms Clark may
2  have to the funds.

3       On March 31, 2009, Mr. Hayes filed an Amended Motion to Modify
4  the March 26th Order (**the Amended Motion**).  The Amended Motion sought
5  authority to file new cases through April 6, 2009.  In support of the
6  Amended Motion Mr. Hayes filed a Declaration stating in pertinent part:

7             1. I became aware of the Court's [March
              26th] order in this case on March 31, 2009 while
8             checking ECF electronic notification . . . .

9             2. At this time, I have a number of clients who
              have significant financial issues with time
10            pressure on them who need to file for relief
              under the bankruptcy code.  They are clients who
11            have pending garnishments, foreclosure dates and
              pending lawsuits.
12
              3. If the cases are not filed in the immediate
13            future, those persons will lose money through
              garnishment or other seizure, or lose property
14            through foreclosure.

15            4. Because of the deadlines involved, it would
              be logistically impossible for them to find
16            substitute counsel or file the cases pro se with
              the deadlines they are facing.
17
              5. Because of the risk of financial hardship and
18            loss involved, and the difficulty of finding
              substitute counsel, I am asking that the Court
19            modify the [March 26th] Order to provide for an
              effective date of April 6, 2009.
20
              6. This is to allow the filing of cases for
21            persons who previously retained me prior to the
              date of the [March 26th] order and who have a
22            significant deadline approaching.

23            7. This declaration is made in good faith, is
              based on personal knowledge, and not made for
24            the purpose of delay.

25       Based on the Amended Motion and Declaration, this court entered
26  an order on April 1, 2009, allowing Mr. Hayes to file new cases through

MEMORANDUM OPINION-3

April 3, 2009, but all other provisions of the March 26th Order remained in effect.

The New Cases:

Between April 1, and April 3, 2009, Mr. Hayes filed <u>35</u> cases on behalf of debtors, 30 under Chapter 7 of the Bankruptcy Code and 5 under Chapter 13.  Among them were <u>Berge</u> (Chapter 13); <u>Galloway</u>,(Chapter 7); <u>Caraway</u> (Chapter 7; <u>Barnard</u> (Chapter 7); <u>Chilson</u> (Chapter 7); <u>Mooney</u> (Chapter 13); and <u>Weller</u> (Chapter 13) (collectively, **the new cases**).  Mr. Hayes did not notify his clients in the new cases that he had been suspended.

The schedules, statements of financial affairs, plans, proofs of claims and other documents filed in the new cases indicate:

    a) no tax debt subject to collection by levy or otherwise;

    b) no secured debt, no delinquent secured debt or no intent by the debtor(s) to retain the collateral;

    c) no lawsuits or administrative proceedings to which the debtor was a party within one year of the petition, and no judgments obtained by creditors before the one year; and

    d) no property attached, garnished or seized under any legal or equitable process within one year of the petition and no indication that any continuing garnishment, attachment, execution, seizure, forced sale, or levy was pending on the date of the petition.

From the evidence adduced, this court is clearly convinced  there was no immediate need or exigency to file any of the new cases.[1]

---

[1] At the August 3rd hearing, Mr. Hayes testified the Galloways were behind or unable to make their mortgage payments, although he admitted there was no foreclosure proceeding in progress.  He believed a Chapter 7 filing could delay foreclosure, thereby buying them time to move, catch-up the payments, or work out a loan modification.  He testified the Wellers filed their case because the
(continued...)

MEMORANDUM OPINION-4

1    In the new Chapter 7 cases, Mr. Hayes charged his normal flat fee

2  of $850 and collected either all or a portion of it before the filing.

3  In the new Chapter 13 cases, Mr. Hayes charged his normal flat fee of

4  $4,000 for the entire case and collected $500 before filing, with the

5  remainder to be paid through the Chapter 13 plan.

6    In the new Chapter 7 cases, the meetings of creditors required

7  under 11 U.S.C. § 341(a)[2] (**meetings**) were set in Salem, Oregon, on May

8  29, 2009.  This was during Mr. Hayes' suspension.  Mr. Hayes was aware of

9  this setting, at the latest, on April 3, 2009 (<u>Chilson</u>), and April 6,

10 2009 (<u>Galloway</u>, <u>Caraway</u> and <u>Barnard</u>), when he received e-service of the

11 notice of bankruptcy filing with the meeting date thereon.  Mr. Hayes

12 contracted with attorney R. Brooke Holstedt to appear for him at the

13 meetings,[3] however he waited until a day or two before the meetings to

14 transfer the case files to Mr. Holstedt and then only went over about

15 half of the files with him.

16    In the new Chapter 13 cases, the confirmation hearing was set for

17 June 16, 2009.  Mr. Hayes received e-notice thereof on  April 3, 2009

18 (<u>Berge</u> and <u>Weller</u>), and April 6, 2009 (Mooney), respectively.  On May 13,

19

20    [1](...continued)
   amount of their debt created a financial hardship, putting pressure on their

21 monthly budget for other expenditures.  The court finds neither of these
   circumstances constitute an emergency or exigency.  In fact, Mr. Weller

22 testified his payments to secured creditors were current and there was no
   emergency.  As to the five other new cases, at the hearing, Mr. Hayes proffered

23 no evidence at all as to any exigency or emergency pending when they were
   filed.  In fact he testified he had not even reviewed the files in preparation

24 for the hearing.

25    [2] Unless otherwise indicated, all subsequent statutory references are to
   Title 11 of the United States Code.

26
      [3] Mr. Hayes testified he would be paying Mr. Holstedt from his own funds.

MEMORANDUM OPINION-5

1   2009, Mr. Hayes received notice that the confirmation hearing in each

2   case had been reset to June 25, 2009.  Both of these dates were during

3   Mr. Hayes' suspension.  Mr. Hayes did not advise his clients that if

4   objections to confirmation were filed, he would not be able to attend the

5   confirmation hearings.  Mr. Weller testified that he first learned of Mr.

6   Hayes' suspension when he called the Chapter 13 Trustee's office before

7   the June 25th hearing to discuss modifications to the plan.  Mr. Weller

8   further testified that he had attempted to contact Mr. Hayes beforehand

9   to discuss the Trustee's pending objections to confirmation but his calls

10  were not returned.  This court finds Mr. Weller's testimony to be

11  credible.

12      In Mooney and Berge, no objections to confirmation were filed,

13  accordingly, the confirmation hearing was not held.  In Weller, ninety

14  minutes before the June 25th hearing, Mr. Hayes faxed a letter to the

15  court requesting that confirmation hearings that morning, in cases in

16  which he was attorney of record, be continued.  The letter stated Mr.

17  Hayes was working on finding substitute counsel for his clients and that

18  Mr. Holstedt, whom he had been working with, was not available for that

19  day's hearings.  The Wellers appeared pro se at the hearing.  The court

20  set the matter over to allow them to procure new counsel.[4]

21      Wilson:

22      The Wilson Chapter 7 case was filed through Mr. Hayes on March

23  26, 2009.  Mr. Hayes charged and received his normal flat fee of $850.

24

25  _____

26      [4] After the August 3rd hearing, a minute order was entered requiring Mr.
    Hayes to refund within 28 days all fees ($500) received in the Weller case.

MEMORANDUM OPINION-6

1    On June 5, 2009, the Office of the United States Trustee (**UST**)

2  moved to dismiss the case under § 707(b) as an abuse of the provisions of

3  Chapter 7.   Before then the UST had repeatedly attempted, unsuccessfully,

4  to contact Mr. Hayes to discuss the motion and obtain documents.

5        On June 9, 2009, Mr. Hayes received e-mail notice of a July 15,

6  2009, hearing on the UST's motion.   The July 15th hearing was duly

7  convened.   At the time, the court's docket indicated no substitution of

8  counsel for Mr. Hayes.   No one appeared at the hearing on Mr. Wilson's

9  behalf.   Mr. Hayes has offered no evidence as to why substitute counsel

10 had not been procured.

11       Clark:

12       Mr. Hayes has not disgorged $2,950 to the Chapter 13 Trustee in

13 Clark as required by the March 26th Order.   He testified he was

14 attempting to work out an agreement with the Trustee to make payments

15 from monies due him on other cases.[5]   He offered no other excuse or

16 justification (such as inability) for his failure to abide.   In light of

17 the fact that Mr. Hayes filed 35 cases by April 3, 2009 (and likely

18 collected some fees in each case, as was his practice) this court infers

19 that he did have the financial ability to comply with the March 26th

20 Order but willfully chose not to do so.

21       Discussion:

22       The UST has recommended that all of Mr. Hayes' fees be denied in

23 the matters at bar and that he be suspended for an additional 90 days.

24 For the reasons that follow, this court adopts the UST's recommendations.

25  _____

26       [5] This, in total disregard of the March 26 order which required payment by
April 20, 2009.

MEMORANDUM OPINION-7

1     <u>Fee Disgorgement</u>:

2     The court may examine the reasonableness of Mr. Hayes'

3 compensation under § 329(b).  "Reasonableness" under § 329(b) is measured

4 by § 330's standards.  <u>American Law Ctr. PC v. Stanley (In re Jastrem)</u>,

5 253 F.3d 438, 443 (9th Cir 2001).  The court considers the nature, extent

6 and value of services rendered taking into account all relevant factors

7 including those set out in § 330(a)(3), and excluding those services

8 described in § 330(a)(4)(A).  If the compensation exceeds the reasonable

9 value of the services, the court may cancel the agreement or order

10 disgorgement of any fees, to the extent excessive, to the estate (if the

11 fees would have been estate property or were to be paid under a Chapter

12 . . . 13 plan), or to the debtor.  § 329(b)(1)-(2).

13     Even before he filed the new cases, Mr. Hayes was (or should have

14 been) aware the meetings could and the confirmation hearings would, be

15 set during his suspension.[6]  By April 6, 2009, his inability to

16 participate in these important hearings was confirmed by court notice.[7]

17

18    [6] The debtors in the new cases reside either in Polk or Marion County.
Because the UST does not staff an office in those counties, meetings may be set
19 up to 60 days from the petition's filing. FRBP 2003(a).  In turn, confirmation
hearings are set 20 to 45 days from the meeting. § 1324(b)

20
    [7] Mr. Hayes filed his required fee disclosures in the new Chapter 7 cases
21 on April 19, 2009.  In the Chapter 13 cases he filed them on April 20, 2009
(<u>Mooney</u> and <u>Berge</u>) and April 26, 2009 (<u>Weller</u>) respectively.  His disclosures
22 (and fee agreements where attached) provided he would represent his clients at
the meeting, and in the Chapter 13 cases, at the confirmation hearing.  By the
23 time the fee disclosures were filed however, Mr. Hayes was aware these hearings
fell within his suspension and that he would have to procure substitute
24 counsel.  A debtor's attorney has a duty under FRBP 2016 and § 329(a) to
disclose the precise nature of his fee arrangement.  <u>In re Addison</u>, 2008 WL
25 1902429, *4 (Bankr.  D.  Or.  2008).  While failing to advise the court
                                       (continued...)

26

MEMORANDUM OPINION-8

1  Given these circumstances, it was inappropriate to charge and collect his

2  normal flat fee.

3  　　　　The first three to four months in any Chapter 7 case are pivotal

4  for debtors.  The meeting is held.  FRBP 2003(a).  The case trustee

5  scrutinizes the debtor's schedules and statement of affairs, often

6  requesting follow-up information.  Many times the trustee makes demand

7  for turnover of non-exempt assets.  The UST conducts its review for abuse

8  under §  707(b), which may lead to the filing of a motion to dismiss.

9  FRBP 1017(e)(1).  Parties in interest examine grounds under § 727 to deny

10  the debtor's full discharge, FRBP 4004(a), or grounds under § 523 to

11  except particular debts from discharge.  § 523(c); FRBP 4007(c).  In

12  Chapter 13, the debtor's payment plan is before the court for

13  confirmation.  Objections to confirmation of the plan are addressed.

14  Plan amendments are negotiated.  If plan confirmation is contested, a

15  confirmation hearing is held.  All of these activities involve

16  interactions with the debtor.  All of them have serious downside risks.

17  Debtors employ counsel to protect them from such risks.  When counsel

18  charges and collects his "normal flat fee" yet knows, in advance, he must

19  "disappear" for 3 months less than 60 days from the case's filing, that

20  clearly constitutes an unreasonable fee arrangement.  The events in

21  several cases at bar bear this out.

22

23  _____

24  　　　[7](...continued)
   substitute counsel would participate in the meetings may not rise to the level
25  of sanctionable conduct, it provides yet another indicia of Mr. Hayes' cavalier
   attitude toward his duties to the court and his clients.

26

MEMORANDUM OPINION-9

1        As noted above, the meetings in the new Chapter 7 cases fell

2   during Mr. Hayes' suspension.  While he did engage Mr. Holstedt to cover

3   for him, Mr. Hayes only delivered his clients' files one to two days

4   beforehand and then only went over half of them with Mr. Holstedt.  In

5   Wilson, Mr. Hayes was unavailable to address the UST's § 707(b) inquiries

6   and left his clients unrepresented at the July 15th hearing.  In the new

7   Chapter 13 cases, Mr. Hayes was able to attend the meetings.  In Weller,

8   however, his suspension barred him from attending the confirmation

9   hearing, yet again he found no one to substitute for him.

10        In addition, one must bear in mind that, but for Mr. Hayes'

11  deceitful Declaration, he would not have gained the extension to file the

12  new cases in the first place; thus he would not have charged or collected

13  the subject fees.  This court is loathe to allow him to profit from his

14  own deceit.

15        In light of the above, this court will cancel the fee agreements

16  in each of the new cases as well as in Wilson.  Mr. Hayes will be ordered

17  to refund all fees received to the respective debtors within 28 days.[8]

18  This refund is without prejudice to the case trustee(s) making a claim to

19  the funds.  Within 42 days Mr. Hayes is to file a declaration stating

20  either that (1) he has made the requisite refunds; or (2) explaining in

21  detail why he has not.  He is also barred from collecting any future fees

22  in the new cases and Wilson.

23  / / / / /

24

25

        [8] The Weller fees are the subject of a previous order. See f.n. #4, supra.

26

MEMORANDUM OPINION-10

1    <u>Suspension</u>:

2         Bankruptcy courts have the inherent power to suspend an attorney

3    provided the attorney is accorded due process.  <u>Price v. Lehtinen et.</u>

4    <u>al.(In re Lehtinen)</u>, 564 F.3d 1052 (9th Cir. 2009); <u>see also</u>, <u>In re</u>

5    <u>Brooks-Hamilton</u>, 400 B.R. 238, 248-249 (9th Cir. BAP 2009)(noting § 105

6    and FRBP 9011 as additional  sources of a bankruptcy court's power to

7    suspend).  In determining reasonable discipline, the court must apply the

8    American Bar Association (ABA) Standards.[9]  <u>Id</u>. at 252.  The standard of

9    proof in disciplinary proceedings is "clear and convincing."  <u>Peugeot v.</u>

10   <u>United States Trustee (In re Crayton)</u>, 192 B.R. 970, 975 (9th Cir. BAP

11   1996).

12        Under the ABA Standards, to determine an appropriate sanction,

13   the court should consider:

14              (1) whether the duty violated was to a client,
                the public, the legal system or the profession;
15
                (2) whether the lawyer acted intentionally, knowingly
16              or negligently;

17              (3) whether the lawyer's misconduct caused a
                serious or potentially serious injury; and
18
                (4) whether aggravating factors or mitigating
19              circumstances exist.

20   <u>Brooks-Hamilton</u>, <u>supra</u> at 252.

21        The threshold inquiry is whether a duty was violated.  In

22   addition to the duties imposed by the Bankruptcy Code and Rules,

23   attorneys practicing before this court must comply with the standards of

24   _____

25        [9] ABA Standards for Imposing Lawyer Sanctions (as amended in 1992) (ABA
     Standards).
26

MEMORANDUM OPINION-11

1  conduct required of members of the Oregon State Bar.  LBR 9010-

2  1(a)(2)(A)(incorporating LR 83.7(a)).

3       In <u>United States Trustee v. Lynn (In re Bellows-Fairchild)</u>, 322

4  B.R. 675 (Bankr. D. Or. 2005) the court permanently enjoined an attorney

5  from practicing in bankruptcy court for violating his duty to accurately

6  and completely prepare the debtor's schedules and statement of financial

7  affairs.  Similarly, in <u>Brooks-Hamilton</u>, <u>supra</u> the trial court based a

8  six month suspension on a finding under FRBP 9011 that an objection to

9  claim was frivolous and filed for an improper purpose.[10]

10      Here, Mr. Hayes violated duties to the court, the legal system in

11 general, the profession, the public, his clients and other parties in

12 interest by:

13      1) falsely representing in his Declaration in support of the
        Amended Motion that there was an immediate need for filing the
14      new cases, in violation of FRBPs 9011(b)(1)(motion must not be
        filed for improper purpose), and 9011(b)(3)(motion's factual
15      contentions must have evidentiary support), and Oregon Rules of
        Professional Conduct (ORPC) 3.3(a)(1)("a lawyer shall not
16      knowingly make a false statement of fact . . . to a tribunal" or
        fail to correct same); 3.3(a)(3)("a lawyer shall not knowingly
17      offer false evidence"); 8.4(a)(3)(a lawyer shall not engage in
        conduct involving dishonesty that reflects adversely on lawyer's
18      fitness to practice); and 8.4(a)(4)(a lawyer shall not engage in
        conduct prejudicial to the administration of justice);
19
        2) requesting, while suspended, a continuance of the June
20      25, 2009, confirmation hearings, in violation of ORPC 5.5(a)(a
        lawyer shall not practice law in violation of the subject
21      jurisdiction's regulation of the legal profession);

22      3) failing to advise his clients of his suspension and
        failing to facilitate the retention of substitute counsel, in
23

24
        _____

        [10] In <u>Brooks-Hamilton</u>, the Appellate Panel remanded because the trial
25 court did not consider the ABA standards in determining the extent of the
   sanction; however, it upheld the finding that some discipline was appropriate.
26

   MEMORANDUM OPINION-12

1  violation of Oregon State Bar Rule of Procedure (BR) 6.3(b) (a
   suspended lawyer must immediately take all reasonable steps to
2  avoid foreseeable prejudice to any client); and ORPCs 1.3 (a
   lawyer shall not neglect a legal matter entrusted to him); and
3  1.4(a) ("a lawyer shall keep a client reasonably informed about
   the status of a matter"). <u>See also</u>; <u>Matter of Kraus</u>, 295 Or.
4  743, 670 P.2d 1012 (1983) (in appropriate circumstances,
   suspended attorneys have a duty to advise clients of suspension);

5
       4) charging his normal fees, in violation of § 329(b) and
6  ORPC 1.5(a)(a lawyer shall not enter into an agreement for,
   charge or collect a clearly excessive fee); and
7
       5) willfully failing to abide by the March 26th Order to
8  disgorge $2,950 to the Chapter 13 Trustee.

9      The court next examines Mr. Hayes' mental state at the time of

10 the misconduct.  Under the ABA Standards an attorney can act

11 "intentionally," "knowingly," or "negligently."  "'Intent' is the

12 conscious objective or purpose to accomplish a particular result."  ABA

13 Standards (Definitions).  "'Knowledge' is the conscious awareness of the

14 nature or attendant circumstances of the conduct but without the

15 conscious objective or purpose to accomplish a particular result." ABA

16 Standards (Definitions).  "'Negligence' is the failure of a lawyer to

17 heed a substantial risk that circumstances exist or that a result will

18 follow, which failure is a deviation from the standard of care that a

19 reasonable lawyer would exercise in the situation."  ABA Standards

20 (Definitions).

21     The court finds Mr. Hayes acted "intentionally."  In <u>In re</u>

22 <u>Conduct of Campbell</u>, 345 Or. 670, 687, 202 P.3d 871, 881 (2009),  the

23 Oregon Supreme Court held a finding of "intentional" conduct requires a

24 showing that "the result the accused intended was not the act taken but

25 the harmful (to others) or beneficial (to the accused) effect of that

26

MEMORANDUM OPINION-13

1  act."  Here, Mr Hayes, purely for his own economic gain (that is, to

2  collect more and clearly excessive fees), intentionally misled the court

3  as to the necessity of immediately filing the new cases.  In failing to

4  advise his clients of his suspension, he intended to protect his

5  reputation (and prospects for future fees) at the expense of candor and

6  full disclosure to his clients.  In failing to procure substitute counsel

7  in <u>Wilson</u> and <u>Weller</u>, he intentionally neglected his clients.  By failing

8  to pay the funds ordered disgorged in <u>Clark</u>, he again protected his own

9  pocketbook at his clients' and their creditors' expense.

10        Next, the court examines whether Mr. Hayes' misconduct caused a

11  serious or potentially serious injury.  "'Injury' is harm to a client,

12  the public, the legal system, or the profession which results from a

13  lawyer's misconduct." ABA Standards (Definitions).  Here, Mr. Hayes'

14  conduct caused serious injury.  His intentionally false Declaration

15  seriously undermined the integrity of the bankruptcy system as well as

16  the legal system as a whole, <u>Lynn</u>, <u>supra</u> at 682, as did his practice of

17  law while suspended and his intentional failure to abide by the March

18  26th disgorgement order.  His intentional neglect caused serious or

19  potentially serious injury to his clients.  His collection of excess fees

20  seriously injured both his clients and their creditors.

21        Finally, the court must consider whether aggravating factors or

22  mitigating circumstances exist.  Aggravating factors are "considerations

23  or factors that may justify an increase in the degree of discipline to be

24  imposed."  ABA Standard 9.21.  Here, multiple aggravating factors are

25  present, including a dishonest or selfish motive,  multiple offenses, a

26

MEMORANDUM OPINION-14

1  pattern of misconduct, prior disciplinary offenses[11] and indifference to

2  making restitution.  ABA Standards 9.22 (a)-(d),(j).  Mitigating factors

3  are "considerations or factors that may justify a reduction in the degree

4  of discipline to be imposed."  ABA Standard 9.31.  Mr. Hayes did not

5  advance any particular mitigating factor.  The court has reviewed the

6  enumerated factors in ABA Standard 9.32 (a)-(m) and finds that none

7  apply.

8        Considering all the relevant ABA standards, the court determines

9  that a suspension of 90 days, beginning August 24, 2009, is

10 appropriate.[12]

11       The above constitutes the court's findings of fact and

12 conclusions of law under FRBP 7052.  An order consistent herewith shall

13 be entered.

   *albert E. radcliffe*

15                          ALBERT E. RADCLIFFE
                           Bankruptcy Judge

16

17

   ---

18
        [11] Mr. Hayes' prior transgressions are set out in detail in In re Clark,
19 2009 WL 936666 (Bankr. D. Or. 2009) and In re Addison, 2008 WL 1902429 (Bankr.
   D. Or. 2008).

20
        [12] Ninety days was the maximum period noticed in the Orders to Show Cause
21 and thus the court is bound by this limit.  However, under the ABA Standards, a
   more severe sanction is probably indicated.  See, ABA Standards 2.3
22 (suspensions should generally be a minimum of six months); 4.41(c) (disbarment
   is generally appropriate for pattern of neglect causing serious injury);
23 6.11(disbarment is generally appropriate for intentional false statements to
   the court causing serious injury or significant adverse effect on legal
24 proceeding); 8.1(b)(disbarment is generally appropriate for intentional
   misconduct causing injury after prior discipline for similar misconduct); 6.21
25 (disbarment is generally appropriate for a knowing violation of court order
   with intent to benefit personally, which causes serious injury).

26

MEMORANDUM OPINION-15